Craig A. EVERAGE, Appellant–
Plaintiff,

v.

NORTHERN INDIANA PUBLIC
SERVICE COMPANY,
Appellee–Defendant.

No. 44A05–0406–CV–315.

Court of Appeals of Indiana.

April 22, 2005.

Edward E. Beck, Shambaugh Kast Beck & Williams, Fort Wayne, IN, Thomas J. Wuori, Halpert Weston Wuori & Sawusch, Kalamazoo, MI, Attorneys for Appellant.

Paul A. Rake, Gregory A. Crisman, Eichhorn & Eichhorn, Hammond, IN, Attorneys for Appellee.

## OPINION

SHARPNACK, Judge.

Craig A. Everage appeals a judgment in favor of Northern Indiana Public Service Company ("NIPSCO") on Everage's complaint. Everage raises one issue,

which we restate as whether the trial court abused its discretion when it sanctioned NIPSCO for a discovery violation by striking the testimony of one NIPSCO employee rather than imposing a more severe sanction. We affirm.[1]

The relevant facts follow. In June 1997, Everage was working on his racecar in his parents' basement level garage. Everage removed the car's fuel filter, and fuel spilled onto his chest and onto the garage floor. Everage yelled for his mother to bring him a glass of water so that he could wash the fuel from his eyes. She refused and told him to go to the bathroom to wash the fuel off. Everage responded that he needed to put the fuel filter back on. Everage's mother brought him a glass of water and walked toward the door so that she could go to work. At that point, Everage scooted out from underneath the racecar and stood up. The fumes from the fuel ignited, severely burning Everage over much of his body.

Everage contends that the fumes were ignited by the pilot light of a natural gas water heater in his parents' basement. NIPSCO provided the natural gas for the Everages' residence. According to Everage, the water heater was improperly installed because it was not elevated, and NIPSCO should have seen that the water heater was improperly installed[2] during an alleged service call in 1993 and should have taken the water heater out of service. According to NIPSCO, the fumes were ignited by an air compressor not the water heater, and it never had the opportunity to observe the Everages' improperly installed water heater because it was never inside of the Everages' residence.

Everage filed a complaint against NIPSCO in April 1999. In April 1999, Everage served a first request for production of documents upon NIPSCO requesting documents related to the Everages' residence. In response, NIPSCO's counsel wrote to Everage's counsel that NIPSCO had found:

> "no service calls", "gas check forms", "inspection forms and documents",

---

1. On September 13, 2004, Everage filed his appellant's brief, which contained a statement of case, statement of facts, summary of the argument, and an argument. After a pre-appeal conference, Everage was permitted to file an amended brief. Ind. Appellate Rule 47 provides:

 On motion for good cause, the Court may grant leave for a party to amend a brief or Petition. The motion shall describe the nature of and reason for the proposed amendment. The movant shall either tender sufficient copies of an amended brief or Petition (the cover of which shall indicate that it is amended) with its motion or request permission to retrieve the original and all copies of the brief or Petition filed with the Clerk and substitute amended pages.

 Thus, upon being granted leave to amend his brief, a party must submit an entirely new amended brief or retrieve its original brief and substitute the amended pages. However, Everage submitted an amended brief that contained a new analysis but no statement of case, statement of facts, or summary of the argument. Further, in his analysis in the amended brief, Everage referred to the analysis of his original brief. See Appellant's Amended Brief at 9 (referring to "Plaintiff–Appellant's Brief on Appeal, at 16"). In reviewing Everage's appeal, we have considered only the statement of case and statement of facts from his original appellant's brief and his analysis from his amended appellant's brief.

 Further, we direct Everage's attention to Ind. Appellate Rule 51(C), which requires that "[a]ll pages of the Appendix shall be numbered at the bottom consecutively, without obscuring the Transcript page numbers, regardless of the number of volumes the Appendix requires." Everage's appendix is organized with tabs, which are helpful to our review, but the pages of the appendix must still be numbered consecutively.

2. NIPSCO did not install the hot water heater.

"itemized bills", "permits and/or installation documents". An emergency call was made to the general area when contractors dug up NIPSCO gas lines.

We are attempting to find any documentation of this event, but have to date been unsuccessful ... This will constitute our response to your Request for Production at this juncture, but we will supplement as may be required.

Appellant's Appendix at Tab F(7). NIPSCO later supplemented its response to Everage's first request for production of documents and provided Everage with a printout of a computer screen regarding the Everages' residence. The printout provided as follows:

Order Type TROUBLE–GAS RE-LIGHT GAS METE [sic]

Customer Name EVERAGE, MER-LAN

\* \* \* \* \* \*

Original Caller BROOKS CONST

\* \* \* \* \* \*

Order Date/Time 6/21/1993 ANY-TIME

\* \* \* \* \* \*

Order Instructions

LOCATE SERVICE 1st HSE WEST OF CR 1150E ON U.S. 20

*Id.* at Tab F(10). The second page of the printout provided that the order was completed on June 23, 1993 by service person "6088." *Id.*

In June 2000, Everage requested that NIPSCO designate persons to testify on its behalf pursuant to Ind. Trial Rule 30(B)(6) regarding:

1) Most knowledgeable employee(s), officers, and /or agents who worked on and/or serviced the Ever age [sic] home. . . .

2) Service person # 6088 who completed order/ticket # 060041006.

3) Employee who is most knowledgeable about NIPSCO's policies and procedures regarding service and maintenance issues, including manuals.

4) Employee who is most knowledgeable about NIPSCO's written policies and procedures regarding installation and hookup of natural gas and inspection procedures at resident homes, including but not limited to, service calls for 1980–1990 and 1990 to current and documents responsive to the production requests below.

5) Fred. C. Bemish or person who is most knowledgeable about Defendant's Answers to Plaintiff's Request to Produce and other discovery requests.

6) Employee who is most knowledgeable about Defendant's record keeping system, including computer stored information.

*Id.* at Tab F(8).

Everage first took the deposition of Joe Klase, a NIPSCO gas service supervisor. At the June 2000 deposition, Klase testified that he had been unable to determine which employee had the 6088 identification number. Further, when asked about the 1993 printout, Klase testified that it was his "understanding that a construction company was digging down about a half a mile away, maybe a quarter mile, and hit a gas main. In doing so we had to shut down the gas main section, which, in fact, we have to go down and physically shut off and hopefully get to turn on the appliances." *Id.* at Tab G(1). According to Klase, NIPSCO would have been required to relight the pilot lights in the affected residences. *Id.*

In July 2001, Everage took the deposition of NIPSCO employee Fred Jacubowicz. Jacubowicz testified that since Klase's

deposition they had determined that Robert Hunsberger[3] was employee "6088." According to Jacubowicz, Hunsberger worked in the street department, not Klase's service department, and located underground gas lines. Jacubowicz testified that the street department employees were not involved in turning on gas in residential homes and that the request to locate the gas lines was made by Brooks Construction. Similarly, former NIPSCO employee Charles Crawford testified in a September 2001 deposition that his understanding of the 1993 printout was that Hunsberger had located the underground gas lines. Further, in October 2001, Everage took the deposition of Keith Naeve, an expert retained by NIPSCO. Naeve testified that Hunsberger was not a serviceman and would not have relit a pilot light at the Everages' home in 1993. Rather, Naeve interpreted the documents to mean that Hunsberger had performed a "locate" at the request of Brooks Construction.[4] Appellee's Appendix at 262.

In September 2001, NIPSCO responded to another set of requests for production and interrogatories. Everage requested that NIPSCO "produce any and all records regarding Brooks Construction, or a gas main or pipe break, leak, or rupture in June of 1993, or reports to fire, police agencies, including but not limited to records for all homes within a half mile east of U.S. [sic] for the time period 6/20/93 to 6/24/93." Appellant's Appendix at Tab F(12). In response, NIPSCO provided another copy of the 1993 printout. Further, Everage requested that NIPSCO provide "all documentation (no matter in what form or where located) regarding the Brooks Construction gas rupture or break in June of 1993 and as testified to by Joe

Klase in pages 30–33 of his deposition transcript...." *Id.* In response, NIPSCO referred Everage to the 1993 printout.

In October 2001, NIPSCO responded to interrogatories from Everage in which Everage asked for information regarding NIPSCO's witnesses and their trial testimony. NIPSCO objected to the interrogatory, but, subject to the objection, referred Everage to Klase's deposition for information on the substance and subject matter of Klase's trial testimony.

Although originally scheduled for November 2001, the jury trial was rescheduled for March 2004. In the parties' pretrial order, Everage claimed that NIPSCO was liable to him because NIPSCO should have warned the Everages of the improperly installed water heater and should have "red-tagged" it. *Id.* at Tab E(1). NIPSCO claimed that the fire was caused when "[a] nearby air compressor [Everage] was using ... cycled on causing a spark from the compressor switch to ignite the gasoline he had spilled...." *Id.* Further, NIPSCO contended that it "had no opportunity to discover either the use of the basement as a garage or the configuration of the water heater at any time before the accident." *Id.*

The jury trial took place in March 2004. On March 5, 2004, Everage called Klase as a witness, and Klase testified, contrary to his deposition testimony, that the 1993 printout did not relate to a break in a gas line. When Everage impeached Klase with his deposition, Klase testified that he had been incorrect at the time of his deposition testimony. Klase testified that NIPSCO had not turned the gas off at the Everages' residence in 1993. On cross-examination, Klase testified that Hunsberger was employee number "6088" and that

---

3. Hunsberger died in early 2001.

4. A "locate" is a process of determining the location of underground facilities, such as gas or electric lines. Appellee's Appendix at 251.

Hunsberger had located underground gas lines in 1993 pursuant to a request from Brooks Construction.

On March 8, 2004, Everage filed a motion to sanction NIPSCO for discovery abuses and misconduct. Specifically, Everage argued that NIPSCO had failed to supplement Klase's deposition testimony and other discovery responses and requested sanctions against NIPSCO. Everage conceded that it was "not reasonably feasible at this juncture to adjourn this trial ... while plaintiff undergoes additional discovery" and did not request a mistrial. Appellee's Appendix at 222. In fact, Everage noted that "there is still an opportunity to receive a fair hearing on his cause with this jury if appropriate remedies and sanctions are imposed." *Id.* Everage requested that the trial court: (1) strike Klase's testimony; (2) inform the jury that "there was a gas break near the Everages in June of 1993" and that "NIPSCO shut off gas to the Everages"; (3) preclude NIPSCO from "calling any witnesses or producing evidence whatsoever to contradict" Klase's deposition and the representations of counsel; and (4) give a special final jury instruction "instructing the jury that it will take as established fact in this case the above referenced points established at Mr. Klase's deposition." *Id.* at 223.

The trial court held a hearing on Everage's motion for sanctions and found:

This is unique. It's a 30(b)(6) violation, in that I'm finding NIPSCO did reply properly as a party, however they have a duty to supplement the testimony of a deposed witness, and to do it on the day of trial—not do it at all before he testified is a violation of limited spirit that I'm finding exists for a party to supplement or correct a deponent's testimony. What to do about it is the hard one. I'm not giving you the sanction you want.

You want the atomic bomb.... [W]hat I'll do is tell the jury that I'm going to strike any testimony of Klase other than what was consistent with his deposition. Cause you know what Jacubowicz is going to say. You know what Crawford is going to say. You know what [Naeve] is going to say, all of which provide additional evidence coming in [ ], that they didn't agree with what Klase said, and all that's fair game. So that's what I'm going to do.

Appellee's Appendix at 276–277. The trial court entered a written order as follows:

1. A deposition of NIPSCO employee, Joe Klase, was scheduled for and occurred on June 15, 2000.

2. NIPSCO was aware that Mr. Klase was subpoenaed to testify per TR 30(b)(6).

3. No direct supplement was made by NIPSCO to inform [Everage] that Mr. Klase obtained subsequent information about the following issues:

A. How to interpret the NIPSCO computers "trouble gas relight" notice that involved construction activities near the Everage home around June 21–23, 1993.

B. The identity and job title of NIPSCO employee 6088.

4. Mr. Klase subsequently changed his opinion from that stated during his deposition.

5. Mr. Klase recanted his deposition testimony through courtroom testimony made on March 4, 2004.

6. This recanted courtroom testimony caught [Everage] by surprise.

7. NIPSCO, as a party, provided supplemental discovery information to [Everage] about the above stated issues after the deposition of Mr. Klase.

8. Examples of NIPSCO's supplementation are contained within the depositions of Mr. Charles Crawford, Mr. Fred Jacubowi[cz], and Dr. [Naeve].

9. NIPSCO's lack of supplementation of Mr. Klase's deposition was a violation of the intent and spirit of TR 30(b)(6)'s requirement to supplement deposition testimony of subpoenaed witnesses.

10. An appropriate remedy in this case is not a continuance or a mistrial of the trial which date was set 1 year ago, and is scheduled for 3 weeks.

11. The factors unique within this case considered before this decision include:

A. The disclosure of non-supplementation was made after a Pre–Trial Order was entered by the trial court.

B. The age of this case. This accident occurred in 1997 and the case was filed in 1999. Witnesses are forgetting information, NIPSCO purges written records each 7 to 10 years and Mr. Merlan Everage, [Everage's] father, is a material witness had a heart attach since the initiation of this lawsuit.

C. The trial court calendar does not allow first setting for extensive 3[-]week trials for at least 1 year.

D. The issue considered provides cumulative evidence regarding NIPSCO's opportunity or reason to enter the Everage's home to provide natural gas related service prior to the fire.

E. NIPSCO has available other defenses including that the air compressor, not the natural gas fired hot water heater ignited this fire, and that an unrelated comparative negligence set-off should be considered by the jury.

12. An appropriate remedy in this case is to strike the courtroom testimony of Mr. Joe Klase and instruct the jury as attached hereto and labeled Exhibit 1, and to consider only the court approved sections of Mr. Klase's ... deposition testimony as read into the record. The counsel for both parties will then be allowed to present additional evidence that supports or rebuts the deposition testimony of Mr. Joe Klase.

13. This remedy is within the boundaries provided by [In re Estate of] *Meyer v. Burke*, 747 N.E.2d [1159] [ (Ind.Ct.App.2001), *trans. denied* ] and 50 Ala. L.Rev. 651, Discovering Corporate Knowledge, by Drs. Sinclair and Fenderich.

Appellant's Appendix at Tab E(2). The trial court instructed the jury that Klase's courtroom testimony was stricken and that the jury should only consider Klase's deposition testimony. Excerpts from Klase's deposition were then read to the jury.

During NIPSCO's case-in-chief, NIPSCO employee John Vogel testified that the 1993 printout indicates that Hunsberger, who was employee number "6088", located underground gas lines near the Everages' residence not that a gas line was broken. Vogel also testified that he did not believe NIPSCO servicemen had ever been in the Everages' basement garage. Jacubowicz also testified that Hunsberger was employee "6088" and that Hunsberger was asked to locate gas lines for Brooks Construction.

Furthermore, at trial, even Lois Everage, Everage's mother, testified that she had never seen a NIPSCO employee come inside of her house, and the Everages'

neighbor testified that her gas had never been turned off and that NIPSCO had never relit her appliances.[5]

The jury found that Everage "was more than fifty (50%) percent at fault and that [NIPSCO] [was] less than fifty (50%) percent at fault; or 100% for [Everage] and 0% for NIPSCO." *Id.* at Tab C. Thus, the jury found for NIPSCO and against Everage. Everage filed a motion to correct error, which the trial court denied.

 The issue is whether the trial court abused its discretion when it sanctioned NIPSCO for a discovery violation by striking the testimony of one NIPSCO employee rather than imposing a more severe sanction. The appropriate sanction for a discovery violation is a matter committed to the sound discretion of the trial court. *Nyby v. Waste Management, Inc.,* 725 N.E.2d 905, 915 (Ind.Ct.App.2000) (citing *McCullough v. Archbold Ladder Co.,* 605 N.E.2d 175, 180 (Ind.1993)), *trans. denied.* An abuse of that discretion occurs if the court's decision is clearly against the logic and effect of the facts and circumstances before the court, or if the trial court has misinterpreted the law. *Id.*

According to Everage, the trial court should have excluded the testimony of all witnesses that differed from Klase's deposition testimony rather than excluding only Klase's trial testimony. We conclude that Everage's argument fails for several reasons.

 First, we conclude that Everage waived the argument. It is the general rule that a party must object to evidence at the time it is offered into the record. *Reed v. Dillon,* 566 N.E.2d 585, 588 (Ind. Ct.App.1991). A party that fails to make a timely objection or fails to file a timely motion to strike waives the right to have the evidence excluded at trial and the right

on appeal to assert the admission of evidence as erroneous. *Id.* "In failing to make a timely objection or motion, the party is, in effect, acquiescing in the admission of the evidence." *Id.*

Here, Everage called Klase as a witness in his case-in-chief. When Klase did not testify in a manner consistent with his deposition, Everage impeached him with his deposition. Everage did not object at the time of Klase's testimony and, in fact, did not object until the trial resumed after a weekend break. Everage did not object in a timely manner and has waived any objection to the discovery violation. Further, following the trial court's exclusion of Klase's trial testimony, we find no evidence in the record provided to us that Everage objected to any other witness's testimony that was inconsistent with Klase's deposition testimony.

In addition, NIPSCO argues that Everage waived his argument because he failed to request a continuance. In *Farley Neighborhood Ass'n v. Town of Speedway,* 765 N.E.2d 1226, 1231 (Ind.2002), our supreme court held that a party waived its argument regarding a discovery violation where the party "did not object to admission of the analysis or request a continuance." Our supreme court held that "any claim of unfair surprise [was] waived." *Id.* Similarly, here, Everage did not request a continuance and, in fact, specifically did not want a continuance. Appellee's Appendix at 222. For these reasons, we conclude that Everage has waived any argument concerning NIPSCO's alleged discovery violation and Everage's surprise.

Waiver notwithstanding, we conclude that Everage's argument that the trial court should have imposed a harsher sanction for the discovery violation fails. Ev-

---

5. We were only provided with portions of the trial transcript on appeal.

erage relies upon Ind. Trial Rule 30(B)(6) and Ind. Trial Rule 26(E). Ind. Trial Rule 30(B)(6) provides:

> A party may in his notice name as the deponent an organization, including without limitation a governmental organization, or a partnership and designate with reasonable particularity the matters on which examination is requested. The organization so named shall designate one or more officers, directors, or managing agents, executive officers, or other persons duly authorized and consenting to testify on its behalf. The persons so designated shall testify as to matters known or available to the organization. This subdivision (B)(6) does not preclude taking a deposition by any other procedure authorized in these rules.

Everage requested that NIPSCO designate persons to testify on its behalf pursuant to Ind. Trial Rule 30(B)(6) regarding:

1) Most knowledgeable employee(s), officers, and /or agents who worked on and/or serviced the Ever age [sic] home....

2) Service person # 6088 who completed order/ticket # 060041006.

3) Employee who is most knowledgeable about NIPSCO's policies and procedures regarding service and maintenance issues, including manuals.

4) Employee who is most knowledgeable about NIPSCO's written policies and procedures regarding installation and hookup of natural gas and inspection procedures at resident homes, including but not limited to, service calls for 1980–1990 and 1990 to current and documents responsive to the production requests below.

5) Fred. C. Bemish or person who is most knowledgeable about Defendant's Answers to Plaintiff's Request

to Produce and other discovery requests.

6) Employee who is most knowledgeable about Defendant's record keeping system, including computer stored information.

Appellant's Appendix at Tab F(8). NIPSCO produced numerous employees for Everage to depose, including Klase. Klase was the first NIPSCO employee deposed and testified that he had been unable to determine which employee had identification number "6088" and that there had been a gas line break near the Everages' residence in 1993.

■ According to Everage, Klase's testimony was binding upon NIPSCO as a judicial admission. Ind. Trial Rule 30(B)(6) is similar to Federal Rule of Civil Procedure 30(b)(6). *See, e.g., Reeder v. Harper,* 788 N.E.2d 1236, 1241 (Ind.2003) (finding cases interpreting the federal rules of civil procedure persuasive in interpreting the Indiana trial rules). In interpreting Federal Rule 30(b)(6), the Seventh Circuit addressed this same argument in *A.I. Credit Corp. v. Legion Ins. Co.,* 265 F.3d 630 (7th Cir.2001). There, McPherson took the deposition of John Rago as the Rule 30(b)(6) designee of A.I. Credit. *Id.* at 637. During the subsequent deposition of Miles Holsworth, Holsworth contradicted Rago's deposition testimony. *Id.* In summary judgment proceedings, McPherson argued that A.I. Credit could not rely upon Holsworth's testimony because it contradicted A.I. Credit's Rule 30(b)(6) witness. *Id.* The Seventh Circuit held:

> McPherson notes that John Rago of A.I. Credit testified in his deposition that he never spoke with McPherson, and suggests in a footnote that A.I. Credit may not rely on Holsworth's testimony that McPherson participated in the April conference call "because Rago was A.I.'s Rule 30(b)(6) witness." One sentence of

the Rule provides, "The persons so designated shall testify as to matters known or reasonably available to the organization." In the light of that sentence, McPherson apparently construes the Rule as absolutely binding a corporate party to its designee's recollection unless the corporation shows that contrary information was not known to it or was inaccessible. Nothing in the advisory committee notes indicates that the Rule goes so far. McPherson cites *Rainey v. American Forest & Paper Ass'n, Inc.*, 26 F.Supp.2d 82, 94 (D.D.C.1998), in support, but two other district courts have reached different conclusions and we think theirs is the sounder view. *See Indus. Hard Chrome, Ltd. v. Hetran, Inc.*, 92 F.Supp.2d 786, 791 (N.D.Ill. 2000) ("testimony given at a Rule 30(b)(6) deposition is evidence which, like any other deposition testimony, can be contradicted and used for impeachment purposes"); *United States v. Taylor*, 166 F.R.D. 356, 362 n. 6 (M.D.N.C. 1996) (testimony of Rule 30(b)(6) designee does not bind corporation in sense of judicial admission). Because Holsworth's testimony can be construed to mean that McPherson *did* participate in a conference call with Rago, the issue is one for the jury.

*Id.; see also Casper v. Esteb Enterprises*, 119 Wash.App. 759, 82 P.3d 1223 (2004), *reconsideration denied.* We agree with the Seventh Circuit and conclude that the testimony of an Ind. Trial Rule 30(B)(6) designee does not bind a corporation in the sense of a judicial admission. *Cf. In re Meyer*, 747 N.E.2d 1159, 1169 (Ind.Ct.App. 2001) (stating "[b]ecause [the employee] had sufficient personal knowledge to bind Bank Calumet under Trial Rule 30(b)(6), we see no basis for finding a lack of competence for him to testify as to the Trust Department's procedures in 1989–90"), *trans. denied.*

Despite the fact that NIPSCO was not bound by Klase's deposition as a judicial admission, Everage also argues that NIPSCO had a duty to supplement Klase's deposition and other discovery provided by NIPSCO pursuant to Ind. Trial Rule 26(E), which provides:

A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to:

 (a) the identity and location of persons having knowledge of discoverable matters, and

 (b) the identity of each person expected to be called as an expert witness at trial, the subject-matter on which he is expected to testify, and the substance of his testimony.

(2) A party is under a duty seasonably to amend a prior response if he obtains information upon the basis of which

 (a) he knows that the response was incorrect when made, or

 (b) he knows that the response though correct when made is no longer true and the circumstances are such that a failure to amend the response is in substance a knowing concealment.

(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through new requests for supplementation of prior responses.

We have held that Ind. Trial Rule 26(E) requires supplementation of discovery responses after the initial response. *P.T. Buntin, M.D., P.C. v. Becker*, 727 N.E.2d 734, 737 (Ind.Ct.App.2000). "This duty to supplement is absolute and is not predicated upon a court order." *Id.* If a party fails to conform to the requirements of Ind. Trial Rule 26(E) and does not supplement discovery responses, the trial court can, in its discretion, exclude the testimony of the witness. *Id.* at 738.

The trial court here concluded that NIPSCO had a duty to supplement Klase's deposition testimony. NIPSCO argues that Ind. Trial Rule 26(E) does not apply to depositions. However, we need not decide this issue because NIPSCO also failed to supplement other discovery responses concerning this issue. *See* Appellant's Appendix at Tab F(7) (response to request for production stating that "[a]n emergency call was made to the general area when contractors dug up NIPSCO gas lines"), Tab F(12) (responses to request for production), and Tab F(13) (answers to interrogatories regarding witness testimony). Despite NIPSCO's failure to supplement discovery pursuant to Ind. Trial Rule 26(E), we cannot conclude that the trial court abused its discretion by failing to exclude all evidence that was inconsistent with Klase's deposition testimony.

"Where there has been a failure to comply with discovery procedures, the trial judge is usually in the best position to determine the dictates of fundamental fairness and whether any resulting harm can be eliminated or satisfactorily alleviated." *Stamper v. Hyundai Motor Co.*, 699 N.E.2d 678, 683 (Ind.Ct.App.1998), *trans. denied.* "Where remedial measures are warranted, a continuance is usually the proper remedy, but exclusion of evidence may be appropriate." *Id.* While the exclusion of Klase's trial testimony may have been an appropriate remedy for NIPSCO's discovery violation, Everage's request to exclude all other witnesses' testimony inconsistent with Klase's deposition was unwarranted. Although Everage argues that such a harsh sanction was needed due to its surprise and NIPSCO's sandbagging, we find Everage's claims of surprise and sandbagging to be unpersuasive.

After Everage deposed Klase, he also deposed other NIPSCO employees who testified that, following Klase's deposition, they had discovered the identity of employee number "6088," that the employee was asked by Brooks Construction to locate underground gas lines, and that no gas line had been broken near the Everages' home. Everage would have been quite aware that, following Klase's deposition, NIPSCO had discovered the identity of employee "6088" and had discovered that no gas line break had occurred in 1993. Thus, despite Klase's deposition testimony, Everage should have been aware of NIPSCO's position and theory of the case regarding the alleged gas line break.[6] As NIPSCO argues, "the trial court recognized [Everage] had no right to a better position than Mr. Klase's original deposition testimony provided." Appellee's Brief at 35. Given that Everage was aware of

---

**6.** Despite the contrary deposition testimony, Everage claims in his amended appellant's brief that "[n]owhere did NIPSCO state in any formal discovery that it would take the position at trial that there was no gas line break near the Everages' and call witness Klase and others to so testify...." Appellant's Amended Brief at 10. Further, Everage did not mention in his statement of case, statement of facts, or amended brief that other NIPSCO employees testified in their depositions that no gas line had been broken near the Everages' home in 1993.

the other witnesses' testimony that was inconsistent with Klase's deposition testimony, we cannot conclude that the trial court abused its discretion by excluding only Klase's trial testimony.

Furthermore, even assuming that the trial court abused its discretion, we conclude that any error was harmless. On appeal, we will sustain a general verdict upon any theory consistent with the evidence. *Picadilly v. Colvin,* 519 N.E.2d 1217, 1221 (Ind.1988). We will reverse a jury's verdict only where there is a total failure of evidence or where the jury's verdict is contrary to the uncontradicted evidence. *Annon II, Inc. v. Rill,* 597 N.E.2d 320, 323 (Ind.Ct.App.1992), *reh'g denied, trans. dismissed.*

The jury found Everage to be 100% at fault and NIPSCO to be 0% at fault. The jury could have reached this result in several plausible ways. For example, the jury could have found that the air compressor, not the hot water heater, caused the fire and, thus, NIPSCO was not at fault, or that the hot water heater caused the fire but NIPSCO never had the opportunity to see the improperly installed hot water heater. Thus, even if the trial court should have excluded all evidence inconsistent with Klase's deposition testimony regarding NIPSCO's alleged opportunity to see the water heater, the jury's verdict is still sustainable because the jury could have found that the air compressor, not the water heater, caused the fire. As a result, Everage is unable to demonstrate that he was prejudiced by the trial court's alleged abuse of discretion. *See, e.g., Sikora v. Fromm,* 782 N.E.2d 355, 361 (Ind.Ct. App.2002) (refusing to remand for a new trial where the party was not denied a fair trial despite the erroneous admission of evidence), *trans. denied.*

For the foregoing reasons, we affirm the judgment in favor of NIPSCO.

Affirmed.

BAKER, J. and FRIEDLANDER, J., concur.